UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

HECTOR SANYUSTIZ MARTINEZ,

     *Petitioner*,

v.

                                          Case No. 3:26-cv-1363-JEP-SJH

WARDEN, FLORIDA BAKER
CORRECTIONAL INSTITUTE, et al.,

     *Respondents*.

_____/

## <u>ORDER</u>

Through counsel, Petitioner, a detainee of the United States Immigration and Customs Enforcement ("ICE"), filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 on May 22, 2026. (Doc. 1). Petitioner argues, among other things, that his prolonged detention violates the Fifth Amendment's Due Process Clause as the Supreme Court construed it in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (*See* Doc. 1 at 14). He asks the Court to order his release. (*Id.* at 16).

The Federal Respondents filed a response in opposition to the petition. (Doc. 4). According to the Federal Respondents, Petitioner has impeded his removal and thus, the Court should toll the presumptively reasonable time period. (*Id.* at 7). The Warden filed a motion to dismiss, arguing he is not a

proper respondent in this case. (Doc. 6). Petitioner filed a reply. (Doc. 8). Upon review of the parties' filings, the Court finds that the petition must be granted.

**I.**

Petitioner, a citizen of Cuba, was paroled into the United States on May 17, 1980. (Doc. 4 at 1). An immigration judge ordered Petitioner removed on January 6, 1998. (*Id.* at 2). "Petitioner was first taken into immigration [custody] post final order of removal on November 3, 2025." (*Id.*). ICE issued to Petitioner a notice of removal to Mexico on November 12, 2025, and on January 6, 2026, and Petitioner refused to sign the notice on both occasions. (*Id.*). On December 22, 2026, ICE advised Petitioner "of specific requirements he needed to complete to assist ICE with obtaining a travel document and to even assist with removal to any country which might accept him," but "Petitioner failed to sign the required documents." (*Id.*).

**II.**

Following an order of removal, immigration detention is governed by 8 U.S.C. § 1231. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 544 (2021) ("§ 1231 explains what to do if the alien is ordered removed."); *see also Deshati v. Noem*, No. 25-cv-15940-ESK, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025) ("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231."). Pursuant to section 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States

2

within a period of 90 days." Detention during the removal period is mandatory. 8 U.S.C. § 1231(a)(2)(A). "The 90-day removal period shall be extended, and the noncitizen may remain in detention, if the noncitizen (1) 'fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure' *or* (2) 'conspires or acts to prevent the alien's removal.'" *Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(C)).

The Supreme Court in *Zadvydas* held that indefinite detention of aliens after a final order of removal raises serious constitutional concerns. 533 U.S. at 690–99. Once an order of removal is final, the government may continue to detain an alien only for a reasonable amount of time. *See id.* at 699–701. The reasonableness of the detention is to be measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence *at the moment of removal.*" *Id.* at 699 (emphasis added). The Supreme Court held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. *Id.* at 700–01. "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period [from section 1231(a)(1)(A)] plus 90 days thereafter." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably

3

foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 1052 (quoting *Zadvydas*, 533 U.S. at 701). Thus, "in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient evidence establishing that there is a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Notably, *Zadvydas* claims asserted prior to the presumptively reasonable six-month period are deemed unripe and subject to dismissal without prejudice. *See Akinwale*, 287 F.3d at 1052; *see also Ramos Alvarez v. U.S. Immigr. & Customs Enf't*, No. 3:25-cv-1038, 2025 WL 2591830, at *1 (M.D. Fla. Sept. 8, 2025).

### III.

Here, Petitioner was taken into ICE custody on November 3, 2025, and he filed this case on May 22, 2026—200 days after his detention. Although Petitioner had been in ICE custody longer than 180 days when this case was filed, the Federal Respondents ask the Court to toll the six-month period because Petitioner "has refused to cooperate with ICE to effectuate his removal" by "refus[ing] to sign the necessary paperwork to assist ICE to secure his removal." (Doc. 4 at 7).

4

Section 1231(a)(1)(C) permits the "removal period" to be extended "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). Courts have applied § 1231(a)(1)(C) differently when addressing a *Zadvydas* claim:

> Many courts conduct an analysis using the burden-shifting framework from *Zadvydas*, considering an alien's failure to cooperate in determining whether the alien can show "good cause" to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Other courts contend that an alien's failure to cooperate precludes an analysis under *Zadvydas* altogether. Finally, some courts find an alien's failure to cooperate or filing of litigation equitably tolls, possibly indefinitely, the six-month removal period. In fact, a couple of courts covered both bases finding obstruction tolled the removal period, and in the alternative, the alien did not meet the *Zadvydas* standard.

*Glushchenko v. United States Dep't of Homeland Sec.*, 566 F. Supp. 3d 693, 705–06 (W.D. Tex. 2021) (footnotes omitted). In *Akinwale*, the Eleventh Circuit recognized that the six-month period may be tolled if the alien "'acts to prevent [his] removal'" by filing litigation "challeng[ing] issues related to his removal order and his post-removal period detention." *Akinwale*, 287 F.3d at 1052 n.4 (quoting 8 U.S.C. § 1231(a)(1)(C)). More recently, the Eleventh Circuit noted that "if the removal period was extended by operation of § 1231(a)(1)(C), then ICE can continue to detain [the petitioner] because 'the keys to [the petitioner's] freedom [are] in his pocket and [he] could likely effectuate his

5

removal by providing the information requested,' so he 'cannot convincingly argue that there is no significant likelihood of removal.'" *Singh*, 945 F.3d at 1314 (quoting *Pelich v. Immigration & Naturalization Serv.*, 329 F.3d 1057, 1060 (9th Cir. 2003)); s*ee Vaz v. Skinner*, 634 F. App'x 778, 782 (11th Cir. 2015)[1] ("Because Petitioner is responsible for thwarting his removal, he cannot show that there is no reasonable likelihood that he will not be removed in the reasonably foreseeable future if he cooperates with DHS and voluntarily signs for the travel document."); *Oladokun v. U.S. Att'y Gen.*, 479 F. App'x 895, 897 (11th Cir. 2012) ("Oladokun fails to 'provide[ ] good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future,'" because his "non-cooperation is the only barrier to his removal." (quoting *Zadvydas,* 533 U.S. at 701).

Here, the Federal Respondents have not shown that Petitioner's "failure to sign" was akin to a "refus[al] to make timely application in good faith for travel or other documents necessary" for his removal or that his "failure to sign" otherwise prevented his removal. 8 U.S.C. § 1231(a)(1)(C). The documents that Petitioner refused to sign are notices to him about ICE's

---

[1] This Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when this Court finds them persuasive on a particular point. *See McNamara v. GEICO*, 30 F.4th 1055, 1060-61 (11th Cir. 2022); Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

intention to remove him to Mexico (*see* Docs. 4-5, 4-6) and documents advising him of his requirements to assist ICE and the consequences he faces for not doing so (Doc. 4-7), not applications for travel documents or forms that would otherwise appear to assist in his removal. The Federal Respondents fail to provide any support for their statement that Petitioner's signature on these forms is "required" for Petitioner's removal. Thus, the Court finds that the presumptively reasonable six-month period of detention expired prior to Petitioner filing the petition.

The Court also finds that Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner contends that ICE has not formulated a plan to remove him and "ICE has no agreement with the Cuban government that would assist it in securing the issuance of the travel document necessary to effectuate Petitioner's" removal. (Doc. 1 at 8). Further, because Petitioner arrived in the United States as part of the Mariel Boatlift, "the effectuation of his outstanding order of deportation is made more problematic." (*Id.*). Petitioner has now been detained for more than seven months, yet ICE still has been unable to remove him. Thus, the burden shifts to Respondents to "respond with evidence sufficient to rebut [Petitioner's] showing." *Akinwale*, 287 F.3d at 1052.

The Federal Respondents wholly fail to address whether there is a significant likelihood that Petitioner will be removed in the reasonably

foreseeable future. Therefore, Petitioner is entitled to release from detention under *Zadvydas*. However, Petitioner's release "shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3); *Zadvydas*, 533 U.S. at 699–700 (holding that when continued detention is unreasonable because removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release.").

Accordingly, it is **ORDERED**:

1. The Warden's motion to dismiss (Doc. 6) is **DENIED** for the same reasons stated in *Lanvin-Valdez v. U.S. Immigr. & Customs Enf't*, No. 3:26-CV-180-JEP-SJH, 2026 WL 1004569, at \*2–3 (M.D. Fla. Apr. 14, 2026).

2. Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Doc. 1) is **GRANTED** as to his *Zadvydas* claim.[2] Respondents shall release Petitioner, subject to supervision pursuant to 8 U.S.C. § 1231(a)(3), **within 24 hours** of this Order, and they shall facilitate

---

[2] Because the Court grants relief on Petitioner's *Zadvydas* claim, the Court need not address Petitioner's other claims. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (declining to address an additional claim in a habeas petition after granting relief on another claim because "any relief [petitioner] could obtain on that claim would be cumulative").

his transportation from the detention facility by notifying his counsel when and where he can be collected.

3. The Clerk is **DIRECTED** to enter judgment granting the petition, terminate any motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida on June 26, 2026.

_____
JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

c:
Counsel of Record

9